**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DARLENE SCANLAN,** | ) |
| Plaintiff, | ) |
| v. | ) |
| **UNITED STATES OF AMERICA** and **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** | ) |
| Defendants. | ) |
| _____ | ) |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** | ) Case No. 10 C 1067 |
| Counter-Plaintiff and Cross-Defendant, | ) Magistrate Judge Morton Denlow |
| v. | ) |
| **DARLENE SCANLAN,** | ) |
| Counter-Defendant, | ) |
| and | ) |
| **UNITED STATES OF AMERICA,** | ) |
| Counter-Defendant and Cross-Claimant. | ) |

# MEMORANDUM OPINION AND ORDER

This case is before the Court on the amended cross-claim brought by the United States of America ("United States") against State Farm Mutual Automobile Insurance Company

("State Farm") seeking to recover $50,000. The United States claims that an attorney for State Farm represented to it that State Farm would contribute its automobile insurance policy limit of $50,000 to the United States towards a settlement, if the United States settled the underlying personal injury case with the Plaintiff Darlene Scanlan ("Plaintiff"). The United States eventually settled the personal injury case with Plaintiff for $70,000 and then made demand for the $50,000 from State Farm. State Farm refused because in the interim, it had directly settled for $50,000 Plaintiff's claim against its insured, John Kupiec ("Kupiec") for $50,000. This cross-claim and trial followed to determine whether State Farm owes the United States $50,000.

      The Court held a one-day bench trial on October 17, 2011. The Court has carefully considered the testimony of the five attorney witnesses, the parties' trial exhibits, the parties' proposed findings of fact and conclusions of law, and the closing arguments of counsel. The following constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent certain findings of fact may be deemed conclusions of law, they shall also be considered conclusions. Similarly, to the extent matters contained in the conclusions of law may be deemed findings of fact, they shall also be considered findings.

## I. FINDINGS OF FACT

**A.     THE FIRST FEDERAL CASE: 08 C 1506.**

1. This case has a long and involved history which includes two state court cases and three federal cases. The saga begins on December 12, 2006, when the Plaintiff was struck in a crosswalk by a vehicle operated by John Kupiec, a United States postal employee, who was driving his personal vehicle. Dkt. 1. Kupiec had a personal auto insurance policy with State Farm with a $50,000 policy limit. SF 1-81.[1]

2. Plaintiff retained Thomas Boleky ("Boleky") of the law firm of Corboy & Demetrio ("Corboy firm") to represent her in connection with her claims arising out of the accident. The Corboy firm filed suit on behalf of Plaintiff and against Kupiec in the Circuit Court of Cook County (10 L 788). Kupiec was represented in the litigation by attorney James Byrne ("Byrne") of the law firm of Bruce Farrel Dorn & Associates. He represents State Farm insureds. (T. 29). Byrne testified at trial.

3. In the course of discovery in the state court case, Kupiec disclosed that he was working for the U. S. Postal Service at the time of the accident. (T. 15). Thereafter, Plaintiff filed an administrative claim with the Postal Service seeking $125,000 in damages under the Federal Tort Claims Act ("FTCA"). (T. 125-26).

---

[1]US ___ refers to the bates stamp numbers in Government Exhibit 1. SF ___ refers to the bates stamp numbers in Government Exhibit 2. (T. ___) refers to the trial transcript page number. Dkt. ___ refers to the docket number of the case. All references to the docket in this section refer to docket entries in Case No. 08 C 1506.

3

4. Assistant United States Attorney Gina E. Brock ("Brock") was assigned to defend the United States. (T. 74). On March 13, 2008, the United States removed the state court lawsuit to federal court (08 C 1506). The United States substituted itself as a party defendant in place of Kupiec and moved to dismiss the lawsuit for failure to exhaust administrative remedies. The motion was granted on June 16, 2008. Dkt. 10.

**B.    THE SECOND FEDERAL CASE: 08 C 3930**.

5. On July 10, 2008, after completing the administrative process, Plaintiff filed a personal injury suit directly against the United States under the FTCA arising out of the December 12, 2006 accident. Dkt. 1.[2] The driver of the vehicle, Kupiec, was not named as a defendant.

6. On July 14, 2008, Byrne faxed a release to Boleky, Plaintiff's attorney, offering to pay the full policy limit of $50,000 in exchange for a release by Plaintiff of State Farm and Kupiec, the named insured under the State Farm policy. (T. 33-34); SF 17-18. The proposed release did not include a release for the United States. *Id.* Boleky rejected the $50,000 offer. (T. 34-35).

7. In October 2008, Brock learned from Boleky that State Farm had tendered a $50,000 settlement offer to Plaintiff. (T. 76).

8. The case was referred to this Court to conduct a settlement conference. Dkt. 15. The parties later consented to this Court's jurisdiction. Dkt. 20. The Court set a settlement conference for March 24, 2009. Dkt. 22.

---

[2]All references to the docket in this section refer to docket entries in Case 08 C 3930.

9. On January 14, 2009, in preparation for the settlement conference, Boleky sent a settlement letter to Brock requesting $125,000 from the United States to settle the case. US 28-29. The Corboy firm viewed the case as one in which liability would be favorable to Plaintiff and the issue at trial would simply be damages. (T. 57).

10. Brock coordinated the defense of the case with Wendy Widemann-Hudson ("Hudson"), an attorney who worked out of the National Torts Center in St. Louis. (T. 147). Hudson works for the Postal Service and she was the client representative. Hudson reported to Ruth Przybeck ("Przybeck"), Chief Counsel Torts for the Postal Service at the National Torts Center. Brock, Hudson and Przybeck all testified at the trial.

11. Following receipt of Plaintiff's settlement demand of $125,000, Hudson consulted with Przybeck to obtain settlement authority. On February 20, 2009, Hudson authorized Brock to settle the case for up to $65,000. US 30. As of this date, Brock had not spoken to Byrne about the case. (T. 103). Hudson understood that the $65,000 would all come from Postal Service funds, and the $65,000 figure was based on an assessment of the merits of the case. (T. 129-31). At the same time, Hudson requested Brock to talk with her supervisor to determine if the United States was an additional insured under Kupiec's State Farm policy. US 30. At no time prior to the settlement conference did the United States ever request or receive a copy of the insurance policy from State Farm. (T. 118-19). In fact, Brock never saw a copy of the State Farm policy until sometime in 2010. (T. 119).

5

12. On February 23, 2009, Brock sent Boleky a letter offering to settle the case on behalf of the United States for $50,000. US 31-32. As of this date, no representation had been made by Byrne that the United States was an additional insured under the State Farm policy. (T. 106, 149). The amount being offered was to be Postal Service funds, since no attempt had been made to this point to determine whether the United States was covered under Kupiec's State Farm policy. The Postal Service believed that liability against its employee was "pretty clear" and its offer was not dependent upon the State Farm policy. (T. 115).

13. Kubiec's deposition took place on March 12, 2009. Byrne and Brock spoke on March 12. (T. 18). Byrne explained to Brock that he was prepared to contribute the $50,000 policy limit towards a settlement, but that Brock and Boleky should work it out. (T. 36-37, 45). Byrne did not tell Brock that the United States was also insured under the policy. (T. 41). Byrne did not tell Brock that he would voluntarily tender the $50,000 to the United States. (T. 37-38). Byrne did not have a copy of the insurance policy in his possession, nor did he review it. (T. 14, 25). Byrne is not involved in insurance coverage issues on behalf of State Farm. (T. 30). Although Brock has a different recollection of the conversation, and the subsequent conversation between Brock, Hudson and Byrne, the Court finds Byrne's version credible. (T. 81-82). It is clear that Byrne was prepared to tender the $50,000 policy limit in exchange for a full release, but he also desired that Plaintiff's counsel and Brock agree on how and to whom the $50,000 should be paid. Byrne wanted to be sure that he was only going to pay a total of $50,00. There simply is no indication that Brock or Hudson ever

6

confirmed with Byrne in writing his alleged representation that the United States was an insured under the State Farm policy or that he had agreed to send the United States a check for $50,000. (T. 137). There was no promise made by Byrne, but rather, attorneys hearing two different versions of the same conversation. The Court would have expected the United States to confirm such an important representation and promise in writing to Byrne if it had in fact been made. There was no such confirmation.

14. Shortly before the settlement conference, Boleky contacted Byrne to confirm that the State Farm $50,000 offer to Plaintiff was still open and Byrne confirmed that it was. (T. 39, 61).

15. A settlement conference with this Court was held on March 24, 2009 attended by Brock on behalf of the United States along with Plaintiff and Kenneth T. Lumb ("Lumb") from the Corboy firm, who attended because Boleky was unavailable. (T. 60). Lumb testified at the trial. The only parties to the litigation at this time were Plaintiff and the United States. The parties agreed to settle the pending case for $70,000. (T. 60). At no time did Brock ever tell Plaintiff or Lumb that $50,000 of the $70,000 would come from State Farm. (T. 62, 109). Lumb and Brock did not discuss with each other the State Farm policy at the settlement conference. (T. 61, 68-69, 87). Brock did not tell Lumb at the settlement conference that Byrne had made any representations to her that the United States was an insured under the State Farm policy, or that Byrne had promised to send her a $50,000 check. (T. 62). At no time prior to the settlement conference had the United States confirmed in writing with Byrne that the United States was insured under the State Farm policy or that

7

State Farm would reimburse it for $50,000 as part of a settlement.

16. At the conclusion of the settlement conference on March 24, this Court entered an Agreed Order of Dismissal, dismissing the case without prejudice with leave to reinstate on or before June 30, 2009. Dkt. 23-24. In the event no motion was filed by June 30, the case would be deemed dismissed with prejudice. *Id.*

17. Later that day, Boleky called and wrote to Byrne advising him that Plaintiff had settled her claims with the Postal Service at the settlement conference and that she was now accepting State Farm's $50,000 policy limits offer to settle the cause of action against Kupiec. SF 116. (T. 21, 41).

18. Sometime after March 24, Byrne became aware of a problem when Brock contacted him to let him know the federal case had settled for $70,000 and she requested a $50,000 check on behalf of the United States from State Farm. (T. 42). Byrne then initiated a conference call with Brock and Boleky and told them there was only $50,000 from State Farm and they should work it out. (T. 42).

19. At all times Plaintiff understood that a total settlement of $120,000 had been reached: $50,000 from State Farm and $70,000 from the United States. (T. 61).

20. On April 16, 2009, Boleky forwarded Plaintiff's signed $50,000 release to Byrne. SF 118-19.

21. In a conference call with Byrne and Boleky on May 20, Brock first became aware that Boleky was claiming that Plaintiff was entitled to $120,000 in settlement of all claims, $50,000 from State Farm and $70,000 from the United States. (T. 90-91). Once the

Postal Service became aware that both Plaintiff and the Postal Service were making a claim to the $50,000 State Farm policy proceeds, the Postal Service had a decision to make. Rather than bring this dispute to the Court's attention, the Postal Service proceeded to pay Plaintiff $70,000 in early June. US 10-12, 37-42. (T. 92-94, 141-42). There was nothing to prevent Plaintiff from receiving separate release agreements from both State Farm and the Postal Service. (T. 73-74).

22. After forwarding the $70,000 check to Plaintiff's attorney, Brock made a written demand to Byrne on June 17, 2009, for $50,000 from State Farm. US 14. (T. 52). The letter did not reference any alleged representations made by Byrne that the Postal Service was insured under the State Farm policy or that he had promised to send a $50,000 check to the Postal Service. (T. 53). Byrne did not respond. (T. 95). The United States did not file a motion with this Court prior to the June 30th date set forth in the Agreed Order. (T. 112-13).

23. On July 24, 2009, Brock sent a follow up letter to Byrne once again requesting him to send the $50,000 State Farm check to her. US 15. Once again, the letter does not refer to any alleged representations made by Byrne that the Postal Service was an additional insured or that he had promised to send a check to the Postal Service for $50,000. (T. 54). Byrne once again did not respond. Brock was operating on the erroneous assumption that the United States was covered by the State Farm policy.

24. On September 14, 2009, Byrne sent a letter to Lumb with a copy to Brock enclosing a $50,000 check payable jointly to the Corboy Firm, Darlene Scanlan and the

9

Postal Service in the hope of pushing the issue to resolution. SF 158-59. (T. 51-52). This check was never negotiated.

25. On October 22, 2009, Plaintiff filed a motion to adjudicate requesting this Court to adjudicate to zero any claimed interest by the United States in Plaintiff's settlement with State Farm and directing State Farm to turn its check over to the Plaintiff, or in the alternative, to rescind the settlement with the United States and vacate the dismissal. (Dkt. 29). This Court denied the motion without prejudice because it no longer had jurisdiction. (Dkt. 33).

**C.     THE THIRD FEDERAL CASE: 10 C 1067.**

26. Scanlan filed suit in the Circuit Court of Cook County (10 L 788) on January 19, 2010 against the United States, State Farm and Kupiec seeking an order adjudicating to zero the claimed interest of the United States in Plaintiff's settlement with State Farm and Kupiec (Count I) and a claim for breach of contract to enforce the $50,000 settlement between Plaintiff and State Farm and Kupiec (Count II). Dkt. 1.[3]

27. On February 17, 2010, the United States removed the case to federal court. Dkt. 1. The case was reassigned to this Court from the district judge by consent of the parties. Dkts. 11 and 13.

28. On May 28, 2010, State Farm filed a counterclaim/cross-claim for interpleader against Plaintiff and the United States seeking to deposit $50,000 into court. Dkt. 17. The Court later dismissed Kupiec as a party to this action. Dkt. 36. On January 7, 2011, the Court entered judgment in favor of Scanlan on the interpleader claim and directed the Clerk

---

[3] All references to docket entries in this section refer to docket entries in Case 10 C 1067.

10

of the Court to pay to Scanlan and the Corboy firm the $50,000 which State Farm had deposited with the Court, plus accrued interest. Dkt. 49.

29. The United States thereafter filed its amended cross-claim against State Farm which is the subject of this trial. Dkt. 52.

**D. THE INSURANCE POLICY.**

30. The United States did not receive a copy of the State Farm policy until sometime in 2010. (T. 119).

31. The policy expressly provides no coverage for the United States and no coverage for Plaintiff's FTCA claim against the United States. The policy states:

> **THERE IS NO COVERAGE:**
>
> . . .
>
> **3. FOR:**
>
> a. THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES; OR
>
> b. ANY PERSON WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

SF 10-11.

**E. SUMMARY FINDINGS.**

32. This case was a big mess that could have easily been avoided by means of better communication between the parties.

33. Byrne did not misrepresent to the United States the nature, character, extent or

amount of Kupiec's insurance coverage from State Farm.

34. State Farm never made any promise regarding insurance coverage or payment to the United States. When conversations between Byrne, Brock and Hudson took place, no promise was made that State Farm would pay $50,000 to the United States, absent an agreement with Plaintiff's counsel that the United States should receive the $50,000 from State Farm. No such agreement was ever reached between the United States and Plaintiff's counsel.

35. The United States was not insured by the State Farm policy. Plaintiff's FTCA claim was not covered by the State Farm policy.

36. The United States never took any steps to confirm in writing with Byrne or to request Byrne to confirm in writing that the United States was covered by the State Farm policy, or that State Farm would pay $50,000 to the United States as part of any settlement. This was an extremely important issue for the Postal Service, and the absence of any written confirmation either from Brock or Hudson to Byrne or from Byrne to Hudson or Brock support the finding that no promise was made by State Farm upon which the United States could reasonably rely.

## II. CONCLUSIONS OF LAW

37. Case 10 C 1067 was properly removed from the Circuit Court of Cook County to federal court pursuant to 28 U.S.C. § 1442 because the United States government was named as a defendant. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1339.

38. State Farm and the United States consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c)(1). Dk. 1.[4]

39. Although the complaint alleges both promissory estoppel and negligent misrepresentation, the trial proceeded only on a theory of promissory estoppel. Thus, the Court will evaluate State Farm's liability to the United States only on the claim of promissory estoppel. The Court's decision would not be any different on a negligent representation claim.

40. Federal common law applies because one of the parties to the alleged agreement is the United States. *See, e.g.*, *Wigod v. Wells Fargo*, 10 CV 2348, 2011 U.S. Dist. LEXIS 7314, *14 (N.D. Ill. Jan. 25, 2011).

41. Federal common law of promissory estoppel has developed primarily in the context of the Employment Retirement Income Security Act and the Labor Management Relations Act. 1-8 *Corbin on Contracts Desk Edition* § 8.05 (2011).

---

[4]All references to docket entries in this section refer to docket entries in Case 10 C 1067.

42. Federal common law of promissory estoppel is generally premised on the *Restatement (Second) of Contracts* § 90(1) which provides:

> (1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

43. To succeed on a claim for promissory estoppel, a plaintiff must demonstrate each element by a preponderance of the evidence, the standard applicable in most civil cases. *See, e.g.*, *Combined Network, Inc. v. Equitable Life Assurance Soc'y of the U.S.*, 805 F.2d 1292, 1297 (7th Cir. 1986); *World Championship Wrestling, Inc. v. GJS Int'l, Inc.*, 13 F. Supp. 2d 725, 734 (N.D. Ill. 1998); *In re Midway Airlines, Inc.*, 180 B.R. 851, 944 (Bankr. N.D. Ill. 1995).

44. To succeed on a claim of promissory estoppel under federal common law, a plaintiff must show that he relied to his detriment on a promise and that his reliance was reasonable. The promise must be sufficiently definite to induce that reliance. *Shields v. Local 705*, 188 F.3d 895, 900-01 (7th Cir. 1999).

45. A promise is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Restatement (Second) of Contracts* § 2(1).

46. Byrne did not promise the United States that it would be paid the $50,000 policy limit from State Farm once the Plaintiff settled with the United States.

47.     Byrne did not make a promise that was sufficiently definite to induce reliance. Rather than make a definite promise to pay the United States $50,000, he explained that Plaintiff's counsel and Brock must work out how and to whom the $50,000 payment would be made. *See Shields*, 188 F.3d at 901. Where a potential promise includes a reservation or limitations, the statement is not sufficiently definite to support a claim for promissory estoppel. *Cf. Aguilar v. Int'l Longshort-Men's Union Local #10*, 966 F.2d 443, 446 (9th Cir. 1992) (stating that California law and federal common law on promissory estoppel are substantially identical and finding an indefinite promise). Nor did Byrne represent to Brock that the United States was an additional insured under the policy. State Farm, through Byrne, did not make a sufficiently definite promise to pay the United States $50,000.

48.     Even if, as the United States contends, Byrne made a statement that was sufficiently unambiguous to support a claim of promissory estoppel, the United States did not reasonably rely on that statement in settling with Plaintiff. *Garwood Packaging, Inc. v. Allen & Co., Inc.*, 378 F.3d 698, 703 (7th Cir. 2004) (discussing the *Restatement (Second) of Contracts* in the context of Indiana law and noting that the more vague a promise is, the less reasonable it is to rely on it).

49.     The United States did not demonstrate a detrimental change in position based on alleged representations by Byrne. *Cf. Shields*, 188 F.3d at 901-02. Hudson authorized Brock to settle the case for $65,000 before any potential promise was made by Byrne. US 30. This initial authorization was given with an understanding that the entire amount would come from Postal Service funds. The United States settled for $70,000. Thus, the United

States has not demonstrated that it changed its settlement position in reliance on Byrne's alleged promise.

50. The doctrine of promissory estoppel is an equitable remedy premised on justice and good faith. *See, e.g.*, 3-8 *Corbin on Contracts* § 8.13. Given the fact that the United States was not insured under the State Farm policy and that Plaintiff's FTCA claim was not covered by the State Farm policy, equity does not support the application of promissory estoppel to the case at bar.

### III. CONCLUSION

**For the reasons set forth in this opinion, judgment is entered in favor of Cross-Defendant State Farm Mutual Automobile Insurance Company and against Cross-Claimant United States of America on the United States of America's amended cross-claim against State Farm. Costs are awarded to State Farm.**

**SO ORDERED THIS 9th DAY OF NOVEMBER, 2011.**

*Morton Denlow*
_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Linda A. Wawzenski
Gina E. Brock
United States Attorney's Office
219 South Dearborn Street
Suite 500
Chicago, IL 60604

**Counsel for United States of America**

Kenneth T. Lumb
Corboy & Demetrio
33 North Dearborn Street
Suite 2100
Chicago, IL 60602

**Counsel for Darlene Scanlan**

Gary Zhao
Smith Amundsen, LLC
150 North Michigan Avenue
Suite 3300
Chicago, IL 60601

**Counsel for State Farm Mutual Automobile Insurance Company**